Levy vs. Levy et al.

---

## No. 13,697.

## HERMAN LEVY vs. ELLA LEVY ET. ALS.

### SYLLABUS.

#### ON MOTION TO DISMISS THE APPEAL.

Appellee should be cited personally or at his domicile when he resides in the State. If, after diligent search, he cannot be found by the sheriff and if he has no domicile at which to make a domiciliary service, citation served on his (appellee's) attorney will save the appeal from absolute dismissal Delay will be granted in order that a regular service of appeal may be made.

The transcript having been filed in due time and all requirements having been complied with, except the service of citation of appeal, which was not made, because appellee could not be found, a citation of appeal may be served after twelve months have elapsed since the judgment of the lower court was rendered.

Another citation of appeal ordered and time granted.

#### ON SECOND MOTION TO DISMISS THE APPEAL.

Grounds of the motion were set forth by the appellee and decided by the court in denying the first motion.

Levy vs. Levy et al.

The same grounds cannot form the basis of a second motion to dismiss the appeal.

ON THE MERITS.

The owner ratified by notarial act a tax sale of her property, as legal (owned by plaintiff under the tax deed).

If there was an ulterior purpose, as alleged, in the ratification, not disclosed by the deed confirming the tax deed, and in reality the ratification made because it was expected that the property conveyed still remained, despite the tax sale, the property of the tax debtor, the purpose cannot be shown (over the purchaser's objection) by oral testimony.

The suit is, in its effects, *inter partes*. It is not a suit by forced heirs seeking their *legitime*, or by creditors to set aside a sale, but by the parties themselves who are personally bound, and also bound as heirs of the former owner of the property.

ON REHEARING.

A tax sale made in 1890 in enforcement of State taxes of 1889 on property assessed in the name of the original owner who died in 1876. His succession had been opened in 1881, when his sons were recognized as his sole heirs. His widow remained in possession as owner of one-half and usufructuary of the other half. The only notices recited as having been given were notices addressed to the original owner. The validity of the tax sale was put at issue in 1894. The widow ratified the sale. *Held*: Her ratification extended only to her undivided half. The sale as to the other half was set aside as invalid.

APPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

*Benjamin Rice Forman,* for Plaintiff, Appellee.

*William S. Benedict,* for Defendant, Appellant.

The opinion of the court on the motion to dismiss was delivered by BREAUX, J.

The opinion on the second motion to dismiss was delivered by BREAUX, J.

On application for rehearing by PROVOSTY, J.

On rehearing by NICHOLLS, C. J.

ON MOTION TO DISMISS THE APPEAL.

BREAUX, J. From a final judgment signed on the 30th day of June, 1899, an appeal was taken.

The petition for the appeal was filed on the 25th day of June, 1900, and on the same day an appeal bond was filed and the appeal was made returnable on the first Monday in November, 1900.

In his petition for an appeal, appellant prayed that appellee be cited. The citation is addressed to plaintiff, Henry Levy, the appellee, The return of the sheriff on the citation sets out that on July second, 1900, due citation was made on the appellee by service on B. R. Forman, his (appellee's) attorney; that he, Herman Levy, appellee, was absent from the State. Appellee moves to dismiss the appeal on the ground that he has not been served with citation of appeal, as required by law.

The affidavit of appellee filed before this court sets out that his residence and domicile have for many years been in New Orleans, and that during the months of June and July, 1900, he was at No. 2423 Magazine street, where citation of appeal could have been served upon him at any time from June 30th, 1899, the date of the judgment appealed from, to the date the appeal was made returnable in November, 1900; and his place of business was at 528 Canal street, where he could have been personally served with citation.

The affidavit of the attorney for appellee states that when the deputy sheriff handed him the citation of appeal addressed to Herman Levy, he told the deputy that he (affiant) had no authority to accept service; that Herman Levy lived in New Orleans and could be served personally at his domicile.

On the other hand, on the part of the appellants, Ella Levy *et al.*, Lythe, the deputy sheriff, deposes that all effort to find Herman Levy at his domicile, No. 2426 Magazine street, proved unavailing; that he was then directed to serve it at his place of business, Levy, Loeb & Co., on Canal street; that, upon calling at that place, he was informed by one, apparently in authority, that Levy was absent from the State and was then in Europe. The affidavit of the other deputy also sets out that he failed to find the appellee after diligent inquiry, and that domiciliary service, for the reason stated, was not possible.

The appeal must be taken within the twelve months after the date of the judgment. The order of appeal was obtained and the appeal bond was given within the twelve months, and the transcript was filed before the return day.

Appellee, for a dismissal of the appeal, urges in the first place that citation of appeal must be served on the appellee personally, or at his

domicile, when he resides in Louisiana, and on the appellee's advocate, when he resides out of the State.

True, as urged by the appellee, that citation of appeal must be served on the appellee personally or at his domicile, when he resides in the State, but it does not always follow that the appeal must be dismissed in all cases of failure to comply with the law's requirements. The failure or inability of the sheriff to make the service of citation or an irregular service of citation of appeal may render it proper and legal to order another citation to issue and service to be made.

The contention of the appellee, for the dismissal is, that he was in the State, and that, in consequence, service should not have been made upon his attorney. The appellee may have been present; none the less, he could not be found, although diligent search was made for him by the deputies. It was equally impossible to make a service at doimcile, for the reasons stated in the affidavit of these officers. A service made upon the attorney, under these circumstances, although not an entirely legal service, is not absolutely void.

In Marshall vs. Watrigant, 13th Ann. 619, the appellee had not been cited at all. Service was made on the attorney and sustained, on the ground that as the appellees had removed from the jurisdiction of the court in violation of law, appellant was not obliged to search for her beyond that jurisdiction, and that service upon her counsel was as good as if the appellee had departed from the State.

We take it, in the case before us for decision, that due search was made for this appellee and that he could not be found. It was the duty of the sheriff to serve the citation and make his return. He exercised his best endeavors to execute the duty, and failed, because the appellee could not be found. It was never within the law's contemplation that appellees should be benefited because of the sheriff's inability to find them or a domicile at which to make service upon them. The alternative in such a case, service on the attorney, may not be complete and sufficient and yet be complete enough for the appellant to bring up his appeal.

It must be borne in mind that the irregularity is due to the appellee himself, who could not be found, and who had no domicile at which service could have been made. It was not an irregularity for which the sheriff or the appellant could be held responsible. It would be different if the sheriff had made passing inquiry for the appellee which had not resulted in his finding him and had then called at the office of his

attorney and served citation of appeal upon the attorney. There was, as we take it, diligent inquiry made and it became thoroughly well known to the sheriff's department that no service could be made as required by the rules. It was only after this was well understood that service was made as before stated.

As to the objection that citation of appeal was served on the attorney after the twelve months had elapsed after the date of the judgment, we will remark that it has been held that this also is not sufficient to dismiss the appeal when it does not appear that the delay is imputable to the appellant and when the service is made a sufficient number of days to be in time before the return day.

In John Lewis vs. D. N. Hennen, 13th Ann. 259, the court said that the appeal had been regularly taken and the bond was given in due form. The first citation was not served because of the absence of the appellee. It did not appear that the defect, error, or irregularity was imputable to the appellant; and, furthermore, it is no objection to the service of the new citation that more than twelve months had elapsed since the judgment of the lower court had been rendered. The proceedings required of the appellant had all been filed in due time and the court said that the "rest is cured by the statute." This was affirmed in Jones vs. Weeks, 14th Ann. 698, in which it was held that an irregular service of citation may be cured after the twelve months have elapsed since the judgment of the lower court was rendered.

Although the point was not raised in Murphy vs. Factors' and Traders' Ins. Co., 33rd Ann. 455, yet it must have been evident to all concerned, as well as to the court, that the twelve months from the date of the judgment appealed from had elapsed when a second service was ordered. The rule met with this court's approval in Cockerham vs. Bosley, 52nd Ann. 65.

After citing another decision, we will bring our own to a close. In Broussard vs. Broussard, 2nd Ann. 769, the plaintiff alleged that she had not been cited at all. This, the court held, was not sufficient to authorize the dismissal of the appeal, that it is the duty of the clerk to issue, and of the sheriff to serve, the citation and make his return. No failure of these officers to do their duty can deprive parties of their right to be heard on appeal, but such neglect authorizes the granting of further time for citing the appellee.

It follows that the same rule should apply when the failure is not due to the officers, but to the fact that the appellee, after diligent search,

could nowhere be found, and had no domicile at which to make a domiciliary service. Hibernia National Bank vs. Sarah Planting and Refining Co. (not yet reported). The motion to dismiss is denied.

It is therefore ordered that the cause be continued until the first Monday of January next in order that the appellee be cited to answer the appeal taken in this case.

### ON MOTION TO DISMISS THE APPEAL.

BREAUX, J. This is the second motion by appellee to dismiss the appeal on the ground that he, as appellee, has not been properly cited to answer the appeal. It occurs to us that our first decree sustaining the appeal covers the objection raised in the second motion to dismiss. In the first motion, plaintiff and appellee averred that there was no legal service of citation of appeal; that he has lived in the city of New Orleans since his birth, and that his domicile was on Magazine street at the number stated. The court, in denying this first motion to dismiss the appeal, found that the sheriff had endeavored to make a legal service, but, owing to his inability to find plaintiff and appellant, he was unable to make a service either on the appellee personally or at his domicile, and that he had, after having advised with defendants and appellants' counsel, made service of the citation of appeal by leaving it with counsel for plaintiff and appellee at his office.

The question was considered by us and we, for reasons stated in our first opinion, ordered another service to be made. The service has been made as required, and it is therefore no longer possible to return to a consideration of the first ground decided.

The second motion to dismiss the appeal is overruled.

### ON THE MERITS.

This is a suit by plaintiff to have himself decreed the owner of the lots of ground and improvements thereon situated in the First District of the city of New Orleans and numbered 23 and 24 in the square number 69.

He sets out in his petition that he bought this property from Lawrence Fabacher, who had bought it from the State tax collector at a public sale, made by the tax collector on the 24th day of May, 1890, for the State taxes of 1889.

He alleges that previous to the tax sale the property was owned by

the late Henry Levy, who, dying, left Sarah Klein, his surviving widow in community, in possession up to the date of purchase by Lawrence Fabacher; that in the year 1891, Sarah Klein, for a valuable consideration, confirmed the title in favor of plaintiff which (he) plaintiff and appellant, Herman Levy, now claims. Plaintiff sets out in his petition that Henry Levy had, at the date of his death, issue of his marriage with Sarah Klein, two children, viz., Alex and Leon Levy, and that these children departed this life prior to the death of Sarah Klein. Plaintiff claims that he owns the property in question, both by acquisition of the title from Fabacher and the acquisition from Sarah Klein, before named. It appears that Allex Levy and Leon Levy departed this life subsequent to their father. It follows that they inherited the undivided half of the property subject to the usufruct of their mother, Sarah Klein, but they died prior to their mother. But plaintiff urges that the said Alex and Leon Levy, having departed this life prior to Sarah Klein, their mother, the grandchildren (to-wit, the children of Alex and Leon Levy) of Sarah Klein could inherit from her, viz., Sarah Klein, the undivided half of the property, and that they, in consequence, could not have inherited it from their late father, Henry Levy. The position of plaintiff on this point is that as these children inherited from their grandmother directly, they are bound by her ratification of plaintiff's title, particularly as it is not shown that the ratification has aught to do with the *legitime* of these heirs.

Plaintiff pleads the tax title as forming one of the links in the chain of title. The heirs of Leon Levy, who are the grandchildren of Sarah Klein, are Ella, wife of Isidore Rich, and Jennie, wife of Leopold Klein, and the heirs of Alex Levy, who are also grandchildren of Sarah Klein, Jacques and Moses Levy and Adeline Levy.

Plaintiff avers that he has become subrogated to the rights of Lawrence Fabacher, and that he and his author in title have paid taxes due prior to his becoming owner of the property to an amount of about fifteen hundred dollars.

The action is for slander of title. The defendants claimed ownership and thereby became plaintiffs in a petitory action. The *onus* of proof is with them. They must sustain whatever strength there is in their own title.

He (plaintiff) charges that at the time of the purchase by Lawrence Fabacher, these heirs (who are plaintiffs in reconvention) were *sui juris*, and aware of the fact of the purchase, and they were also aware

of the fact that the purchasers were paying amounts of taxes as heretofore stated as due on the property; that they were willing at the time that plaintiff should have entire and perfect title to the property.

Plaintiff further charges that these defendants have slandered his title and have, thereby, prevented him from selling the property, and on these and other grounds he claims damages in the sum of twenty-five hundred dollars.

Plaintiff annexed interrogatories to his petition to be answered by these defendants. Defendants pleaded a general denial and, also, attacked the tax sale before mentioned, which Sarah Klein confirmed, on the ground that no assessment had been made of the property, no advertisement, and no demand of payment and on other grounds.

They (defendants) aver in this answer that this sale was made through the instrumentality of Herman Levy to Lawrence Fabacher and from Fabacher to Herman Levy, and confirmed to Herman Levy by Sarah Klein, his grandmother, in her interest for her benefit and for the benefit of the children and heirs of Henry Levy, Alex Levy and Leon Levy. They seek to recover interest they allege they have in the property and ask that plaintiff be ordered to account for the receipts and disbursements on said property.

The interrogatories propounded by plaintiff to defendants were answered. Motion was made to strike out the answers to interrogatories on facts and articles on the ground that they were improperly answered, not categorically, and attempted to inject into the answers things that do not belong to the case. The motion was granted in part and rejected as to the remainder of the answers.

There was also a motion made to compel the defendants to elect between two antagonistic and inconsistent positions, in that defendants in their answers set forth the invalidity of the tax sale in question, and they also set forth that, plaintiff who invokes this tax title, bought the property for the use, benefit, and advantage of the grandmother of the defendants; that the latter plea affirms the validity of the title, while the former denies it, and the two are inconsistent. The District Court declined to compel the defendants to elect as to their pleas.

Both pleas being before us for decision, we take up the first. The tax deed under which plaintiff holds contains the recital that the formalities required in order to convey title at tax sale have all been complied with. Defendants have not sought to prove any of the irregularities and

illegalities charged in their answer. The *onus* of proof was with the defendants by whom the tax deed had been attacked. The tax sale has a validity upon its face which must retain full, legal effect until it is shown that the declarations in the deed are not correct. The sale was made in 1890 and duly inscribed in the proper office. No question but that the taxes for which the property sold were due. Upon this branch of the case it only remains for us to affirm the judgment.

But defendants raise another issue which, in our view, goes far toward affirming the validity of the tax sale they attacked in this suit. They allege and contend that the property was purchased at tax sale for account of their grandmother (Sarah Klein).

They have failed to sustain their averment that the property was not that of the plaintiff, but of their grandmother. In their answer to the interrogatories propounded to them by plaintiff, and to which we have before referred, they sought to prove and sustain their defense by injecting testimony not called for by the interrogatories. This was excluded by ruling of the lower court, to which ruling we do not infer that objection is now urged. Defendants afterward, in the trial, sought to sustain their plea against the title of plaintiff by offering to examine other witnesses to prove by parol that plaintiff is not the owner, and that the deed under which he holds is a simulation. The defendants are not claiming as creditors, nor are they third persons. They are heirs who set up that the plaintiff is not entitled to the property. There is no question of *legitime* as issue. They are therefore bound by the action of their grandmother, who ratified by deed the title which they attack. All the evidence offered was oral and inadmissible to set aside a deed which has been ratified by all concerned.

The attack of plaintiff in reconvention upon plaintiff Herman Levy's title being based exclusively upon oral testimony, the rule of law which prevents persons *inter partes,* from attacking and setting aside their own deeds upon oral testimony, must be sustained. The defendants do not allege and show fraud and simulation; they are not forced heirs seeking to recover their *legitime,* nor creditors seeking to set aside a sale in fraud of their rights; all exceptions that do not apply to defendants' case.

Defendants' oral testimony could not be heard in order that they might substitute another title (oral) to plaintiff's title.

Plaintiff, as a witness, testified in support of his deed. The attempt to impeach him as a witness and show that he held the title without consideration was not successful. No part of the testimony admitted in evidence, or no part of that excluded, shows, or has a tendency to prove that the sale in question was without consideration, as contended by plaintiffs in reconvention.

We do not think that the testimony sustains any demand for the damages claimed by the plaintiff. This demand was not pressed upon the court's attention. Our examination of the issues has resulted in convincing us that the issues as presented do not make out a case for damages.

By agreement of all the parties concerned, another suit was consolidated with this case. The judgment of the District Court rendered a separate judgment in the last mentioned case. We do not understand that defendants appeal from that judgment which was rendered in their favor.

For reasons assigned, it is ordered, adjudged, and decreed that the judgment decreeing plaintiff to be the owner of the property described therein and rejecting plaintiff's demand for damages, be affirmed.

## ON APPLICATION FOR REHEARING.

PROVOSTY, J. A rehearing is granted in this case, restricted to the question of the validity or invalidity of the tax sale, in so far as concerns the interest of the two defendants in the undivided half once owned by their grandfather, Henry Levy, in the property in question and title to which they claim by inheritance; the inquiry being restricted to the irregularities alleged in the tax proceedings leading to the sale. The liability for costs to abide the final decision.

## ON REHEARING.

NICHOLLS, C. J. A rehearing was granted in this case restricted to the question of the validity or invalidity of the tax sale, in so far as concerns the interest of the two defendants to the undivided half once owned by their grandfather, Henry Levy, in the property in question, and title to which they claim by inheritance, the inquiry being restricted to the irregularities alleged in the tax proceedings leading to the sale.

The property involved in this litigation was purchased by Henry

Levy during his marriage with Sarah Klein. Henry Levy died in March, 1876, leaving as his heirs "his sons, Alexander Levy and Leon Levy, issue of his marriage with Sarah Klein. His succession was opened in the Civil District Court for the Parish of Orleans, and the two sons were, on the 21st of July, 1881, recognized by judgment of court as his sole heirs to the property in question, their mother being entitled to the undivided half as widow in community, and holding possession of the other half under her usufructuary rights.

*Leon Levy* died on the 3rd of August, 1889, and *Alexander Levy* died on the 18th of August of the same year.

Their mother, *Sarah Klein,* died on the 23rd of *February,* 1894. On the 24th of May, 1900, two lots claimed by the plaintiff were separately sold at tax sale in enforcement of State taxes of 1889, assessed upon it in the name of Henry Levy, and adjudicated to Lawrence Fabacher; deeds to Fabacher were executed on June 12, 1900.

On the 21st of July, 1891, Fabacher, by notarial act, sold and assigned, but without warranty, to the plaintiff, Herman Levy, a son of *Alexander Levy,* and the plaintiff herein, all his (Fabacher's) rights, title and interest in and to the two lots adjudicated to him, for and in consideration of recited price of five hundred dollars, which the vendor acknowledged he had received and for which he gave acquittance.

The titles were declared to have been based on the tax adjudications referred to. *Mrs. Sarah Klein,* the mother of Herman Levy, intervened in this act, and took cognizance of the sale to him by Fabacher. She referred to the tax adjudications and acknowledged that they were valid and binding; that she had no defenses to urge against the same, and that title to the property had vested absolutely in Fabacher by non-redemption of the same within the period fixed by law.

In view of the premises and in consideration of the sum of five hundred dollars then and there paid to her by Herman Levy, she "relinquished, abandoned, remitted, transmitted and forever quit-claimed to the latter (which quit-claim Herman Levy accepted) all such rights, title, interest, claim, pretension, action or cause of action she might have had in the properties, binding herself to warrant him and his heirs or assigns against all person or persons lawfully claiming the same in the quiet and peaceable possession of the same forever."

On the 12th of March, 1894, the plaintiff instituted the present action of slander of title against Ella Levy, wife of Isidore Rich, and Teenie

Levy, widow of Leopold Klein, the daughters and sole heirs of Leon Levy.

On the 24th of March, 1894, the defendants answered. They averred: That plaintiff has no legal nor equitable title to the property described in his petition, for this, namely: That the tax sale under which his vendor acquired, and under which Sarah Klein Levy confirmed to him for family purposes, was and is null and void, because:

1st.   A proper assessment of said property was not made.

2nd.   That notice of demand of payment, of advertisement, of the sale of said property was not made or given as required by law, your respondents being then non-residents and in ignorance of what was done.

3rd.   They aver the sale was made and had through the instrumentality of Herman Levy to Lawrence Fabacher, and from him to Herman Levy, by Sarah Klein Levy, his grandmother, in the interest and for the benefit of their said grandmother, and the children and heirs of Henry Levy, Alex Levy and Leon Levy, and without any other consideration to said Sarah Klein Levy, and with the view and object of placing said property in the name of Herman Levy, as a living person, to collect the revenues thereof, pay the legal charges and taxes accrued thereon, and with the surplus of proceeds thereof, to contribute to the support of their grandmother, Sarah Klein Levy, in the same manner he and Alex Levy before had done, prior to said tax sales; said tax sales and confirmation being without the knowledge of these defendants, and concealed from them until January, 1894."

On the 25th of April, 1894, by act before Dreyfous, notary public, Leopold Klein, husband of Teenie Levy, executed a power of attorney to Isidore Rich, in which he, among other matters, empowered him "to authorize my (his) wife in all acts and matters in which such authorization is necessary, particularly to authorize her to defend the suit against her instituted by Herman Levy or to enter into that connection into all contracts, covenants and agreements as may be requisite; to sign all bonds of appeal or other needful bonds, or to assist her in any compromise and composition as she may deem most advisable in her interest."   On the 15th of May, 1894, Ella Levy, wife of Isidore Rich. and Teenie Levy, wife of Leopold Klein, and Isidore Rich to aid and authorize his wife and under the said power of attorney to aid and assist Mrs. Klein, executed an act before Cohn, notary, in which it was recited that, whereas, Herman Levy is the apparent owner of certain

real estate hereinafter described, situated in this city, and whereas they
are desirous of giving a full quit-claim to said Levy thereto, and of his
ratifying his title thereto,—therefore, in view of the premises, and for
a full and valuable consideration received by them, as they hereby
acknowledged, they do respectively, by these presents, relinquish, aban-
don, remise, transfer and forever quit-claim unto the said Herman
Levy, his heirs and assigns, all of which the said Herman Levy hereby
accepts, all such rights, title, interest, claim, pretensions, action or
cause of action which they might have or might have had in and to the
following described real estate, hereby binding ourselves to warrant
said Levy, his heirs and assigns against all persons lawfully claiming
the said property in the quiet and peaceable possession of the same
forever." (After this follows a description of the properties declaring
them to be the same properties acquired by Lawrence Fabacher at the
tax sales.)

Herman Levy did not sign this act, though it was evidently contem-
plated that he should have done so. This quit-claim deed was recorded
on June 27th, 1894.

On the 26th of June, 1894, Herman Levy sold these lots under full
warranty and with subrogation to Frank J. Nusloch for five thousand
dollars—twenty-five hundred dollars cash, the balance represented by
three notes of the purchaser, payable to his own order and by him en-
dorsed, secured by special mortgage and vendor's privilege on the prop-
erty. The plaintiff repudiated and repudiates the claim that the tax
sales here made for the reasons and purposes stated in the answer and
maintains and contends that they were made not by consent, but ad-
versely to the owners; that Fabacher obtained a full, absolute and com-
plete title to the lots which he himself subsequently acquired, solely on
his own account and which he caused his mother to have confirmed and
ratified for a valuable consideration passing to her from himself.

*The quit claim from the defendants to the plaintiff is not referred
to in the pleadings, nor are any claims urged and asked upon it. It
was evidently executed under some compromise arrangement or reser-
vation.

Mrs. Sarah Klein only owned the undivided half of the property; her
ratification and quit-claim covered nothing more than her own interest
in the property. She could bind herself, but not bind the defendants
holding an interest in the other undivided half as heirs of their father,
Leon Levy, and the plaintiff denies that she intended or attempted to
do so.

Unles the defendants have concluded themselves in some way we think their interest in the properties as heirs of their father was not divested by the tax sales referred to. They were made in enforcement of the delinquent taxes of 1889, under an assessment made in the name of Henry Levy. He was not the owner at that time, but had been dead a number of years. The father of the defendants had been recognized as one of his heirs as far back as 1881 by judgment of court and his mother, Sarah Klein, was in possession as usufructuary at the date of the tax sales.

The deed refers to *Henry Levy* as being the delinquent taxpayer and declares that the notices given were sent to him. An assessment of the property made at that time in the name of Henry Levy and notices sent to him were not under the circumstances of the case a compliance with the requirements of the law. We set aside a tax sale in Genella vs. Vincent, 50 Ann. 966-967, under circumstances very similar to the present. The property in that case had been sold under an assessment in the name of Catherine Neidergang. She had removed from New Orleans to Switzerland years before and had died there, bequeathing her property to her husband, Jaquier. Her succession was opened in New Orleans and her husband recognized and placed in possession. At the time of the tax sale Jaquier was absent from the State, but the property was in possession of his tenant. In the tax deed the notices required by law to be given were declared to have been given to the delinquent tax debtor and the delinquent tax debtor in the deed declared to be Catherine Neidergang.

At the time of the tax sale which is involved in the present litigation, Teenie Levy, wife of Leopold Klein, was owner of one undivided eighth interest in each of the two lots described in plaintiff's petition as heir of her father, Leon Levy, and Ella Levy, wife of Isidore Rich, was owner of one undivided eighth interest in each of said lots described in plaintiff's petition as heir of her father, Leon Levy. We are of opinion that the said Ella Levy and the said Teenie Levy were not divested of their said interest in the property by the tax sales referred to in the pleadings, and that they are still the owners of the same. We are strongly impressed with the belief that Fabacher was merely a party interposed to hold title, and that the real adjudicatee at the tax sale was either Mrs. Sarah Klein or Herman Levy. It will be remembered at the time of the tax sales the latter was himself a joint owner in the properties by reason of his heirship of his father, Alexander Levy.

If the plaintiff in this suit has made payment of taxes on the property, towards the payment of which defendants should have contributed, he has the right to enforce such contribution now. The continued possession of the property has given rise to reciprocal rights and obligations between the parties which should be liquidated and the property partitioned, if the parties elect to put an end to their joint ownership. The record is not in a situation to enable us to pass upon these questions, and the cause must be remanded for that purpose.

For the reasons herein assigned, it is ordered, adjudged and decreed that the defendant, Ella Levy, wife of Isidore Rich, and the defendant, Teenie Levy, wife of Leopold Klein, are owners each of one undivided eighth interest in each of the lots of ground described in the petition of the plaintiff herein, the tax sales of the said properties by C. Harrison Parker, State tax collector, on the 24th of May, 1890, at which said properties were adjudicated to Lawrence Fabacher, to the contrary notwithstanding, and it is hereby ordered, adjudged and decreed that the said tax sales and the said adjudications be and they are hereby decreed, to the extent of the said interest of the said parties in said properties, null, void and of no effect, and that the same be set aside. It is further ordered, adjudged and decreed that the former decree of this court rendered in this matter, to the extent herein just adjudged and decreed, be annulled, avoided and reversed; and it is further ordered, adjudged and decreed that this cause be remanded to the District Court and there reinstated on the docket, and that that court cause, by proper proceedings, to be ascertained, adjusted and liquidated the respective rights and obligations of the parties hereto arising out of and relating to said properties.

It is further ordered, adjudged and decreed that the plaintiff pay the costs of this appeal, defendants to pay the costs of the District Court. It is further ordered, adjudged and decreed that our former decree and judgment herein, except as herein altered and amended, remain undisturbed and affirmed.

BREAUX, J., dissents.